UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

BECKY SUE H.,

                    Plaintiff,

v.                                    3:20-CV-0835
                                    (BKS/ML)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                            OF COUNSEL:

COUGHLIN, GERHART LAW FIRM        SCOT G. MILLER, ESQ.
  Counsel for Plaintiff
Post Office Box 2039
99 Corporate Drive
Binghamton, New York 13902

SOCIAL SECURITY ADMINISTRATION    MOLLY CARTER, ESQ.
  Counsel for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

MIROSLAV LOVRIC, United States Magistrate Judge

## REPORT and RECOMMENDATION

      Plaintiff Becky Sue H. ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of Social Security

("Defendant" or "Commissioner"), denying her application for Social Security Disability

Insurance ("SSDI") benefits. (Dkt. No. 1.) This case has proceeded in accordance with General

Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of

Social Security benefits. Currently before the Court are Plaintiff's motion for judgment on the

pleadings (Dkt. No. 14) and Defendant's motion for judgment on the pleadings (Dkt. No. 16).

For the reasons set forth below, I recommend that Defendant's motion for judgment on the

pleadings (Dkt. No. 16) be granted, Plaintiff's motion for judgment on the pleadings (Dkt. No.

14) be denied, the Commissioner's decision denying Plaintiff SSDI benefits be affirmed, and

Plaintiff's Complaint (Dkt. No. 1) be dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

As of the date of the administrative hearing on March 8, 2019, Plaintiff was 49 years old.

(Dkt. No. 10, Attach. 2 at 11, 24.)  Plaintiff was a high school graduate and able to communicate

in English.  (*Id*. at 24.)

Plaintiff was diagnosed with fibromyalgia.  (*Id*. at 14.)  Plaintiff had the following severe

impairments: bilateral carpal tunnel syndrome, left ulnar neuropathy, cervical and lumbar

degenerative disc disease, left knee osteoarthritis and meniscus tear, asthma, chronic obstructive

pulmonary disease ("COPD"), obstructive sleep apnea, obesity, attention deficit disorder, bipolar

disorder, depressive disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD").  (*Id*.

at 14.)

Plaintiff's attorney advised the ALJ that her ability to work was limited by her bilateral

carpal tunnel condition, osteoarthritis, fibromyalgia, sacroiliitis, and left knee issues, which

impaired her ability to use her upper extremities for work activities.  (*Id*. at 39.)  Plaintiff's

attorney advised the ALJ that Dr. Mehrhof—who was Plaintiff's treating psychiatrist—indicated

that Plaintiff had "essentially no work capacity."  (*Id*. at 39-40.)  Plaintiff testified that the

surgical procedures on her left side and her continued carpal bone and ulnar nerve pain cause her

to drop things frequently.  (*Id*. at 43-44.)  Plaintiff reported stiffness, tightness, pain in her neck

and lower back, general back pain of the thoracic spine, and left shoulder pain from bursitis and tendonitis of the left shoulder. (*Id*. at 45, 52.) She reported breathing difficulties caused by COPD, asthma, and obstructive sleep apnea. (*Id*. at 49.) She reported that she avoided walking to reduce the use of her inhaler. (*Id*. at 49-50.)

Although Plaintiff previously worked as a housekeeper, the vocational expert ("VE") testified that she could not perform her past work. (*Id*. at 24.)

## B.    Procedural History

On March 23, 2017, Plaintiff filed an application for SSDI, alleging that she became disabled on June 13, 2013, due to chronic pain, bipolar, fibromyalgia, arthritis, tendonitis, osteoporosis, bilateral carpal tunnel, depression, asthma, and right shoulder condition. (*Id*. at 11, Dkt. No. 10, Attach. 3 at 4.) Plaintiff's application was denied initially on June 14, 2017. (Dkt. No. 10, Attach. 2 at 11.) Plaintiff requested a hearing which was held on March 8, 2019, before Administrative Law Judge ("ALJ") Hope G. Grunberg. (*Id*. at 11-16, 33-60.) The ALJ issued an unfavorable decision on May 22, 2019. (*Id*. at 11-26.) This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on June 12, 2020. (*Id*. at 2-4.)

## C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following eleven findings of fact and conclusions of law. (*Id*. at 11-26.) First, the ALJ found that Plaintiff last met the insured status requirements for benefits under the Social Security Act on December 31, 2018. (*Id*. at 14.) Second, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of July 8, 2016, through the date last insured, December 31, 2018. (*Id*.) Third, the ALJ found that Plaintiff had severe impairments of bilateral

3

carpal tunnel syndrome status post two left carpal tunnel release procedures, left ulnar neuropathy status post left ulnar release procedure, cervical and lumbar degenerative disk disease, left knee osteoarthritis and meniscus tear, asthma, COPD, obstructive sleep apnea, obesity, attention deficit disorder, bipolar disease, depressive disorder, anxiety disorder, and PTSD.  (*Id*.)  The ALJ also noted that there was evidence that Plaintiff was diagnosed with fibromyalgia, but there was not sufficient evidence to establish a medically determinable impairment because there was no evidence of tender point testing or any documentation that she has at least eleven positive tender points on physical examination to satisfy the requirements of Social Security Ruling 12-2p.  (*Id*.)  Fourth, the ALJ found that through the date of last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (*Id*. at 15-17.)  More specifically, the ALJ considered Listings 1.00(B)(2)(b) (ambulation), 1.00(B)(2)(c) (fine and gross movements), 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.02 (chronic respiratory disorders), 3.03 (asthma), 3.09 (chronic pulmonary hypertension), 4.02 (chronic heart failure), 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).  (*Id*.)  In addition, the ALJ considered obesity under SSR 02-1p.  (*Id.*)  The ALJ found that Plaintiff had moderate limitations in (a) understanding, remembering, or applying information, (b) interacting with others, (c) concentrating, persisting, or maintaining pace, and (d) adapting or managing herself.  (*Id.*)  Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except the [Plaintiff] can occasionally stoop, kneel, crouch, and climb ramps and stairs, but not crawl or climb ladders, ropes or scaffolds. She can frequently handle and finger and occasionally feel and reach

overhead with the bilateral upper extremities. She should avoid
concentrated exposure to respiratory irritants including fumes,
odors, dust, gases and areas of poor ventilation. She should avoid
workplace hazards such as unprotected heights and dangerous
moving machinery. She should not operate motorized vehicles.
The [Plaintiff] is limited to understanding, remembering and
carrying out simple tasks. There should be no work requiring a
high quota production rate pace (i.e., rapid assembly line work
where co-workers are side-by-side and the work of one affects the
work of the other). She may make judgments on simple work, and
respond appropriately to usual work situations in a routine work
setting that is repetitive from day to day. Changes should be easily
explained and no more than occasional. The [Plaintiff] may have
occasional interactions with the public, co-workers and
supervisors.

(*Id*. at 17-24.)  Sixth, the ALJ found that through the date last insured, Plaintiff was unable to

perform any past relevant work.  (*Id*. at 24.)  The ALJ also found that Plaintiff had past relevant

work as a housekeeper and the VE testified that Plaintiff could not perform this past relevant

work.  (*Id*.)  Seventh, the ALJ found that on the date last insured, Plaintiff was 49 years old,

which is defined as a younger individual (20 C.F.R. § 404.1563).  (*Id*.)  Eighth, the ALJ found

that Plaintiff has at least a high school education and is able to communicate in English.  (*Id.*)

Ninth, the ALJ found that transferability of job skills is not an issue because Plaintiff's past

relevant work is unskilled.  (*Id.*)  Tenth, the ALJ found that considering Plaintiff's age,

education, work experience, and RFC, there are jobs that exist in significant numbers in the

national economy that she can perform.  (*Id*. at 24-25.)  More specifically, the VE testified that,

given these factors, Plaintiff would be able to perform the requirements of representative

occupations such as marking clerk, routing clerk, and dispatch clerk.  (*Id*.)  Eleventh, the ALJ

concluded that Plaintiff has not been under a disability from July 8, 2016, through December 31,

2018.  (*Id*. at 25.)

D.     **The Parties' Briefings on the Motions**

1.     **Plaintiff's Motion for Judgment on the Pleadings**

Generally, Plaintiff makes two arguments in support of her motion for judgment on the

pleadings.  (*See generally* Dkt. No. 14 at 18-26 [Pl.'s Mem. of Law].)

First, Plaintiff argues that the ALJ improperly weighed medical opinions.  (*Id*. at 18-22.)

More specifically, Plaintiff argues that the ALJ erred in assigning little weight to the opinion of

Plaintiff's treating psychiatrist, Dr. Mehrhof.  (*Id.*)  Plaintiff argues that the ALJ failed to

consider (a) that Dr. Mehrhof was Plaintiff's only treating psychiatrist, (b) that Plaintiff saw Dr.

Mehrhof monthly for over two and a half years, and (c) that Dr. Mehrhof wrote Plaintiff's

prescriptions.  (*Id*.)  Plaintiff argues that a person need not be committed to a psychiatric hospital

to prove a disabling mental impairment and the ALJ incorrectly found Dr. Mehrhof's opinion

inconsistent with her routine and conservative treatment history.  (*Id*.)  Plaintiff also argues that

Dr. Mehrhof's opinion was consistent with the opinion of consultative examiner Dr. Slowik, and

any perceived inconsistency would still not be grounds for assigning little weight to the opinion

of Dr. Mehrhof.  (*Id*.)  Moreover, Plaintiff argues that the ALJ improperly assigned great weight

to the vague opinion of licensed social worker—which is not an acceptable medical source—

Maureen Kiely, whose opinion does not contain any treatment records and last saw Plaintiff on

December 1, 2016.  (*Id*.)

Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial

evidence.  (*Id*. at 22-26.)  Plaintiff argues that the ALJ's RFC determination is inconsistent with

the opinion evidence that the ALJ afforded great weight to.  (*Id.*)  Plaintiff argues that the ALJ

assigned great weight to the opinion of Dr. Slowik, who found moderate to marked limitations in

Plaintiff's ability to sustain an ordinary routine and to regulate her emotions, and "it is

completely obvious" that those limitations "would cause Plaintiff to be absent from work more than two days a month and frequently late," which the VE testified would preclude all work. (*Id*.)  In addition, Plaintiff argues that her treating physicians—Dr. Jander and Jessa Dauria, NP—noted in their medical opinions that Plaintiff would be off task more than fifteen percent of the work day and would miss more than three days per month of work due to her impairments. (*Id.*)  Plaintiff argues that the RFC assumed the capacity to function in a routine and repetitive work setting, and, based on Dr. Slowik's assessed moderate to marked limitation sustaining an ordinary routine, it is reasonable to conclude that Plaintiff would be incapable of functioning on a consistent basis.  (*Id.*)  Moreover, Plaintiff argues that the ALJ improperly used stale and conclusory opinion evidence when she gave great weight to the opinion of consultative examiner Dr. Gilbert Jenouri, MD, who examined Plaintiff approximately 18 months before the date last insured and was the only opinion regarding Plaintiff's physical impairments that the ALJ assigned significant weight to, despite having extensive medical records and opinion evidence from Plaintiff's treating physician, Dr. Jander.  (*Id.*)  Further, Plaintiff argues that the ALJ improperly based her determination regarding Plaintiff's mental impairments on the opinion of psychologist T. Harding, Ph.D., who lacked a foundation to render a medical opinion because Dr. Harding did not examine Plaintiff or review all of the medical records from her treating psychologist, Dr. Mehrhof.  (*Id*.)

## 2.    Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes two arguments in support of her motion for judgment on the pleadings.  (Dkt. No. 16, at 4-23 [Def.'s Mem. of Law].)

First, Defendant argues that the ALJ properly evaluated the medical opinions and reasonably assigned little weight to the conclusory and unsupported opinions of Plaintiff's

treating psychiatrist, primary care physician, and a nurse practitioner.  (*Id*. at 4-14.)  More specifically, Defendant argues that the ALJ properly afforded little weight to Dr. Mehrhof's opinion because (a) the conclusions that Plaintiff was "unable to work" and "clearly disabled," were inconsistent with Plaintiff's monthly medication management, psychotherapy visits, and lack of evidence indicating any significant symptom exacerbations or inpatient treatment, (b) Dr. Mehrhof's conclusions were inconsistent with the findings of Dr. Slowik and mental status examinations that consistently showed normal findings in the areas of thought process, associative thinking, memory, attention span, concentration, knowledge, vocabulary, judgment, and insight, (c) the ALJ demonstrated consideration of the treating relationship between Plaintiff and Dr. Mehrhof, Dr. Mehrhof's specialty, and the length of the treating relationship, (d) the ALJ found Dr. Mehrhof's opinion was inconsistent with the June 2017, consultative examination findings that showed, *inter alia*, intact orientation, mostly average intellectual functioning, good insight, and fair judgment, (e) the ALJ cited to treatment notes from Dr. Kowalski, covering the eight months leading up to Plaintiff's alleged onset date, which consistently noted an anxious mood but objective findings within normal limits in the areas of thought process, memory, attention, concentration, insight, and judgment, and (f) the ALJ noted that Dr. Mehrhof's treatment notes, covering the period from August 2016 through March 2019—which were handwritten and often illegible—primarily focused on Plaintiff's subjective reports.  (*Id*. at 4-10.)

In addition, Defendant argues that the ALJ properly afforded little weight to the opinions of Dr. Jander and Ms. Dauria.  (*Id.* at 10-13.)  Defendant argues that Plaintiff waived any challenge to the ALJ's application of the treating physician rule as it pertains to the opinions of Dr. Jander and Ms. Dauria because Plaintiff did not expressly argue that the ALJ erred in

affording little weight to those opinions and instead argued that they support a more limiting RFC.  (*Id.*)  Defendant also argues that Dr. Jander stated in a treatment note that Plaintiff did "not agree" with Ms. Dauria's opinion—that Plaintiff would be off task over fifteen percent of a workday and absent more than three times per month—but Plaintiff declined a referral to occupational therapy for a formal assessment of her abilities and Dr. Jander noted that it is "very difficult for [a] general internist to provide an expert opinion about a level of disability in the upper extremities."  (*Id.*)  Moreover, Defendant argues that the ALJ properly assigned the opinions of Dr. Jander and Ms. Dauria little weight because they were "at least partially based on the claimant's reported symptoms rather than objective evidence."  (*Id.*)

Further, Defendant argues that the ALJ's decision to afford great weight to Ms. Kiely's opinion does not warrant remand.  (*Id.* at 13-14.)  Defendant argues that, although Ms. Kiely is a licensed clinical social worker, which is not an acceptable medical source defined in the regulations, the ALJ afforded her opinion great weight—not *controlling* weight.  (*Id.*)  In addition, Defendant argues that Ms. Kiely's opinion was consistent with Plaintiff's treatment history and reported activities of daily living.  (*Id.*)  Moreover, Defendant argues that even if the ALJ erred in affording Ms. Kiely's opinion great weight, the error was harmless because the RFC contained greater mental functional limitations than those assessed by Ms. Kiely.  (*Id.*)

Second, Defendant argues that the ALJ properly afforded great weight to the opinions of the consultative examiners and state agency psychologist, and supported her decision with substantial evidence.  (*Id.* at 14-23.)  More specifically, Defendant argues that the ALJ properly afforded great weight to (1) the opinion of Dr. Jenouri because (a) it was consistent with the record, and (b) the fact that Dr. Jenouri did not review Plaintiff's medical record does not render him unable to assess Plaintiff's functional abilities, (2) the opinion of Dr. Slowik because (a) it is

supported by the objective findings of her mental status examination, (b) it is consistent with other mental status findings, (c) the ALJ was not required to accept every limitation in the opinion of a consultative examiner, and (d) Plaintiff's RFC accounts for limitations in sustaining a routine, and (3) the opinion of Dr. Harding because (a) he reviewed over a year of medical evidence, (b) the ALJ specifically cited Dr. Mehrhof's treatment records while finding that Dr. Harding's opinion was consistent with Plaintiff's subsequent treatment history, (c) Dr. Harding was familiar with the Social Security rules and regulations, and (d) Plaintiff failed to establish that additional limitations should have been included in her RFC. (*Id.*)

## II.   GOVERNING LEGAL STANDARDS

### A.   Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *Roat v. Barnhart*, 717 F. Supp. 2d 241,

248 (N.D.N.Y. 2010) (Kahn, J.). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Featherly*, 793 F. Supp. 2d at 630.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

   **B.    Standard for Benefits[1]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

---

[1]    The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

### C.    Standard Regarding RFC Determinations

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC

is the individual's maximum remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means

eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)); *accord Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Babcock v. Berryhill,* 17-CV-00580, 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (Sannes, J.); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.).

In rendering a RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945; *see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019) (Hummel, M.J.) ("When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant."); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)) ("In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing, conclusory statements regarding plaintiff's capacities are not sufficient."). An ALJ must specify the functions a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (Kahn, J.); *accord*

*Stephens,* 200 F. Supp. 3d at 361; *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440

(N.D.N.Y. 2004) (Sharpe, J.)*; Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728

F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183).  The RFC assessment must also

include a narrative discussion, describing how the evidence supports the ALJ's conclusions,

citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, 17-CV-1266,

2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996

WL 374184, at *7).

 In formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one

medical source's opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although

the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources

cited in his decision, he was entitled to weigh all of the evidence available to make an RFC

finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014

WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (Sharpe, C.J.) (finding that it was within the ALJ's

discretion to afford weight to a portion of a treating physician's opinion but not to another

portion); *Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's

conclusion may not perfectly correspond with any of the opinions of medical sources cited in his

decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is]

consistent with the record as a whole.'") (quoting *Matta*, 508 F. App'x at 56); *West v. Comm'r of*

*Soc. Sec.*, 15-CV-1042, 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016) (Mitchell, M.J.),

*report and recommendation adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016); *see also*

*Dirisio v. Comm'r of Soc. Sec.*, 15-CV-1181, 2016 WL 7378930, at *4 (N.D.N.Y. Dec. 20, 2016)

(Suddaby, C.J.) ("In formulating the RFC, an ALJ is not required to adhere to the entirety of one

medical source's opinion.") (citing *Matta*, 508 F. App'x at 56); *Wilburn v. Colvin*, 15-CV-0058,

2016 WL 1237789, at *4 (N.D.N.Y. Feb. 29, 2016) (Dancks, M.J.) (finding that the ALJ was not obligated to incorporate all of a physician's limitations into the RFC where he afforded the opinion "significant but not great weight").

## III.    ANALYSIS

### A.    Whether the ALJ Properly Weighed the Medical Opinions

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 16 at 4-14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendant's reasons.[2]

#### 1.    The ALJ's Assignment of "Little Weight" to Treating Psychiatrist Dr. Mehrhof's Opinion

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. § 404.1527(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations in which the treating physician's opinion is not entitled to controlling weight, when the ALJ must "explicitly consider, inter alia[, the following]: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the

---

[2]    On January 18, 2017, the Social Security Administration ("SSA") published a final rule that changed the protocol for evaluating medical opinion evidence.  *See* Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404 & 416).  Those new regulations apply only to claims filed with the SSA on or after March 27, 2017.  Because Plaintiff's claim was filed before that date, to the extent that the regulations are cited, the Court refers to versions of the regulations that were in effect prior to March 27, 2017.

opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

Nonetheless, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (Carter, M.J.), *report and recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (Suddaby, C.J.) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

Inconsistency with objective findings, or lack of support from the record, can constitute good reason for rejecting an opinion, even from a treating physician. *See Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled)) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record"); *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) (Mordue, C.J.) (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007) (Bianchini, M.J.)) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.").

Here, there is substantial evidence to support the ALJ's assignment of "little weight" to the opinion of treating psychiatrist Dr. Mehrhof. (Dkt. No. 10, Attach. 2 at 23.) The ALJ properly discounted Dr. Mehrhof's opinion—that Plaintiff was "unable to work" and "clearly disabled"—because it was inconsistent with Plaintiff's routine and conservative treatment history involving medication, psychotherapy, and no evidence of any significant symptom exacerbations involving inpatient treatment or psychiatric hospitalization. (*Id.*); *see Abarzua v. Berryhill*, 754 F. App'x 70, 71 (2d Cir. 2019) (upholding the ALJ's observation that the treating physician's opinion was contradicted by, *inter alia*, the plaintiff's conservative treatment); *Tricarico v. Colvin*, 681 F. App'x 98, 100-01 (2d Cir. 2017) (upholding the ALJ's decision to afford limited weight to a treating physician's assessment based on, *inter alia*, a conservative course of treatment); *Cutillo v. Berryhill*, 2018 WL 3752871, at *3 (N.D.N.Y. Aug. 8, 2018) (citation omitted) ("Generally, conservative treatment alone is not 'compelling evidence . . . to overcome an otherwise medical opinion.' However, the ALJ can factor conservative treatment as additional evidence."); *Henry v. Astrue*, 32 F. Supp. 3d 170, 187-88 (N.D.N.Y. 2012) (Kahn, J.) (finding that the ALJ's consideration of the treatment evidence, along with the State Agency medical consultant's opinion, amounted to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

In addition, Dr. Mehrhof's opinion was based on Plaintiff's subjective reports, as opposed to his own observations or objective abnormalities. *See Dailey v. Comm'r of Soc. Sec.*, 14-CV-1518, 2016 WL 922261, at *5 (N.D.N.Y. Feb. 18, 2016) (Carter, M.J.) (noting that "[a]n ALJ may provide less weight to a treating source's opinion if that opinion is based on plaintiff's subjective complaints and not on objective medical evidence") (citing *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012); *Major v.*

*Astrue*, 12-CV-304S, 2013 WL 2296396, at *5 (W.D.N.Y. May 24, 2013); *Ford v. Astrue*, 06-CV-1227, 2010 WL 3825618, at *9 (N.D.N.Y. Sept. 24, 2010) (Kahn, J.)); *Aldrich v. Astrue,* 08-CV-0402, 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009) (McAvoy, J.) (finding that the ALJ was entitled to afford less than controlling weight to the opinion of a treating physician who appeared to rely on the plaintiff's subjective complaints more than any diagnostic or clinical evidence).

Moreover, Dr. Mehrhof's opinion was inconsistent with the consultative examiner's findings[3] and other mental status examinations in the record, including those of Dr. Kowalski, who opined that Plaintiff was in an anxious mood but within normal limits in the areas of thought process, memory, attention, concentration, insight, and judgment. (Dkt. No. 10, Attach. 2 at 23; Dkt. No. 10, Attach. 7 at 34-61.)

As a result, I find that substantial evidence supports the ALJ's assignment of "little weight" to the opinion of treating psychiatrist Dr. Mehrhof. *See Anselm v. Comm'r of Soc. Sec.*, 737 F. App'x 552 (2d Cir. 2018) (holding that an ALJ may set aside a treating physician's opinion where there is contradiction by the weight of other evidence in the record); *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) ("A physician's opinions are given less weight when his opinions are internally inconsistent.").

### 2.    The ALJ's Assignment of "Great Weight" to Ms. Kiely's Opinion

Licensed clinical social workers are not considered "acceptable medical sources" under the social security regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). Instead, clinical social workers are considered "other sources" within the meaning of 20 C.F.R. §§ 404.1513(d) and

---

[3]    For the reasons set forth in Part III.B.1. of this Report and Recommendation, I reject Plaintiff's contention that the ALJ improperly credited the opinion of consultative examiner Dr. Slowik.

416.913(d).  As such, their opinions "cannot establish the existence of a medically determinable impairment."  *See* SSR 06-003P, 2006 WL 2329939, at *2 (2006).[4]  However, their opinions may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function."  SSR 06-003P, 2006 WL 2329939, at *2.

Social Security Ruling 06–03P recognizes that "[m]edical sources . . . , such as . . . licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists."  *Id.* at *3.  The ruling recognizes that such opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *Id*.  The ruling directs the ALJ "to use the same factors for evaluation of the opinions of acceptable medical sources to evaluate the opinions of medical sources who are not acceptable medical sources, including licensed social workers."  *Genovese v. Astrue*, 11-CV-2054, 2012 WL 4960355, at *14 (E.D.N.Y. Oct. 17, 2012) (internal quotations omitted).  "An ALJ is not required to give controlling weight to a social worker's opinion; although he is not entitled to disregard it altogether, he may use his discretion to determine the appropriate weight."  *Cordero v. Astrue*, 11-CV-0520, 2013 WL 3879727, at *3 (S.D.N.Y. July 29, 2013); *Jones v. Astrue*, 09-CV-1232, 2012 WL 1605566, at *5 (N.D.N.Y. Apr. 17, 2012) (Bianchini, M.J.) (quoting *Diaz v. Shalala*, 59 F.3d 307, 313–14 (2d Cir. 1995)) ("the Second Circuit has held that 'the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him"), *report and recommendation adopted*, 2012 WL 1605593 (N.D.N.Y. May 8, 2012) (Scullin, J.); *Allen v. Astrue*, 05-CV-0101, 2008 WL 660510,

---

[4]     This policy interpretation ruling has been rescinded for claims filed on or after March 27, 2017.  *See* 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

at *9 (N.D.N.Y. Mar. 10, 2008) (Mordue, C.J.) (although not an acceptable medical source, "[a]s plaintiff's longtime treating psychotherapist and the only treating source who evaluated the disabling effects of plaintiff's mental impairments, [plaintiff's therapist's] opinion was relevant to the ALJ's disability determination[;] . . . [t]hus, the ALJ should have articulated why he discredited [the therapist's] reports").

Here, the ALJ properly assigned "great weight" to the opinion of licensed clinical social worker, Ms. Kiely.  (Dkt. No. 10, Attach. 2 at 23.)  Although the ALJ acknowledged that the limitations contained in Ms. Kiely's opinion were ambiguous, she also noted that the limitations were consistent with Plaintiff's conservative and routine treatment history, which contained no evidence of significant exacerbations involving inpatient treatment or psychiatric hospitalizations.  (*Id*.)  In addition, the ALJ noted that Ms. Kiely's opinion was consistent with Plaintiff's reported activities of daily living, which included the ability to watch television, listen to music, prepare meals, and maintain relationships with her family and neighbors.  (*Id*.); *see Galo G. v. Comm'r of Soc. Sec.*, 20-CV-1011, 2021 WL 5232722, at *5 (N.D.N.Y. Nov. 9, 2021) (Scullin, J.) (holding that the ALJ properly found the opinion of a doctor unpersuasive where the ALJ noted that the doctor's "conclusions regarding [the plaintiff's] physical limitations are not consistent with the record as a whole, including the evidence . . . regarding the claimant's activities of daily living.").

Moreover, as discussed by Defendant in her memorandum of law, even if the ALJ's assignment of "great weight" to the opinion of Ms. Kiely was in error, Plaintiff has failed to show how the rejection of this opinion would lead to a more restrictive RFC or different outcome on remand because the ALJ properly afforded great weight to the opinions of Dr. Slowik—the

state agency consultant—and Dr. Harding—the consultative examiner—to support the mental

RFC.  (Dkt. No. 16 at 14.)

As a result, I recommend that the Court deny Plaintiff's motion for judgment on the

pleadings asserting that the ALJ failed to properly evaluate the medical evidence.

**B.**    **Whether Substantial Evidence Supports the ALJ's RFC Determination**

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendant's memorandum of law.  (Dkt. No. 16 at 14-23 [Def.'s Mem. of

Law].)  To those reasons, the Court adds the following analysis, which is intended to supplement

but not supplant Defendant's reasons.

The ALJ's RFC determination is consistent with the opinions of Dr. Jenouri, Dr. Slowik,

and Dr. Harding, to which, the ALJ assigned great weight.  (Dkt. No. 10, Attach. 2 at 16-23.)

**1.**    **Opinion of Dr. Slowik**

The ALJ assigned great weight to the opinion of Dr. Slowik, who opined that Plaintiff

had moderate to marked limitations in her ability to sustain an ordinary routine and regulate her

emotions.  (Dkt. No. 10, Attach. 2 at 23.)

First, the Court notes that the RCF formulated by the ALJ need not "perfectly correspond

with any of the opinions of medical sources cited in [her] decision, [because an ALJ is] entitled

to weigh all of the evidence available to make an RFC finding that was consistent with the record

as a whole."  *Matta*, 508 F. App'x at 56.

Second, it is not apparent that the RCF fails to account for these limitations.  The ALJ's

RFC limitations to understanding, remembering and carrying out simple tasks, no work requiring

a high quota production rate pace, judgments on simple work, work that is repetitive from day to

day, and occasional interactions with the public, co-workers, and supervisors, reasonably account

for the opined moderate to marked limitation in sustaining an ordinary routine and regulating

emotions.  *See Sharon R. v. Kijakazi*, 2021 WL 3884257, at *8 (N.D.N.Y. Aug. 31, 2021)

(Baxter, M.J.) (finding that where Dr. Slowik assessed mild to moderate limitations in attention

and concentration, "the ALJ's restricting plaintiff to unskilled work with no production rate pace

and no more than occasional changes in the work routine took into consideration the plaintiff's

'work pace' and any limitations in her ability to follow a routine."); *Janet L.K. v. Saul*, 20-CV-

0725, 2021 WL 2592899, at *5 (N.D.N.Y. June 24, 2021) (Suddaby, C.J.) (finding that "The

ALJ's RFC limitation to simple, repetitive, one-or-two-task, low stress jobs with no more than

occasional decision-making and occasional changes in work setting, and no more than occasional

interaction in the workplace with supervisors reasonably accounts for the opined mild limitation

in maintaining a regular schedule and mild-to-moderate difficulty sustaining an ordinary

routine."); *Tamara M. v. Saul*, 19-CV-1138, 2021 WL 1198359, at *11 (N.D.N.Y. Mar. 30,

2021) (Hummel, M.J.) (finding that an RFC for only simple instructions and decisions not

performed at a production rate was sufficient to incorporate mild-to-moderate limitations in

staying on task or maintaining appropriate levels of attendance); *Lowry v. Comm'r of Soc. Sec.*,

15-CV-1553, 2017 WL 1290685, at *5 (N.D.N.Y. Mar. 16, 2017) (Carter, M.J.) (finding that an

RFC limitation to simple, routine work accounted for the physician's opinion that the plaintiff

may have a moderate limitation in his ability to maintain a schedule), *report-recommendation*

*adopted by* 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017) (Suddaby, C.J.); *Landers v. Colvin*, 14-

CV-1090, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("The determination that Plaintiff

is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's [moderate] limitations

as to maintaining attention and concentration, performing activities within a schedule, and

maintaining regular attendance.").  Of note, Plaintiff has not pointed to any evidence that would

suggest that any specific additional functional restrictions related to sustaining a routine and attendance are warranted as a result of her mental impairments.

Third, even if I were to accept Plaintiff's argument that the ALJ rejected these limitations and such rejection was error (which I do not), I find that such error would nonetheless be harmless here.  Plaintiff fails to provide any evidence or legal precedent to support her argument that a moderate or moderate-to-marked limitation is suggestive of a limitation that would cause Plaintiff to be absent more than two days per month, or would otherwise be disabling.  *See Bradley W. v. Comm'r of Soc. Sec.*, 19-CV-1217, 2020 WL 5848833, at *12 (N.D.N.Y. Oct. 1, 2020) (Baxter, M.J.) ("Even if the ALJ erred in failing to adopt both providers' 'moderate' limitations in plaintiff's ability to maintain a schedule, a 'moderate' restriction is still consistent with the ability to perform substantial gainful activity, and would at most, be harmless error."); *Melisa G. v. Berryhill*, 18-CV-0508, 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (Stewart, M.J.) (noting that "moderate limitations are not prohibitive of performing unskilled work"); *Lowry v. Comm'r of Soc. Sec.*, 15-CV-1553, 2017 WL 1290685, at *4-5 (N.D.N.Y. Mar. 16, 2017) (Mitchell, M.J.) (rejecting plaintiff's argument that a moderate limitation in ability to maintain a routine translated to an opinion that plaintiff would be off-task 20% of the workday or absent more than four days per month).

### 2.    Opinion of Dr. Jenouri

The ALJ found that the opinion of Dr. Jenouri was consistent with the diagnostic imaging studies and medical records reflecting a normal gait, normal motor strength in all extremities, normal grip strength, and lack of significant sensation or reflex deficits.  (Dkt. No. 10, Attach. 2 at 21.)  In addition, the ALJ noted that Dr. Jenouri's opinion was consistent with his own physical examination findings and observations.  (*Id*.)  Although Dr. Jenouri did not review

Plaintiff's medical records, "under the Regulations, a consultative examiner is not required to review a plaintiff's medical record." *Gamble v. Comm'r of Soc. Sec.*, 15-CV-0352, 2016 WL 4491710, at *6 (N.D.N.Y. July 25, 2016) (Mitchell, M.J.) (citing 20 C.F.R. § 404.1519n).

In addition, the fact that Dr. Jenouri only examined Plaintiff one time does not mean that "[i]t is obvious" that he "was not in a position to render an opinion as to [Plaintiff's] physical residual capacities." (Dkt. No. 14 at 25.)  Instead, "[i]t is well-settled that the opinion of a consultative examiner who only examined a patient once can constitute substantial evidence in support of the ALJ's determination if supported by the record." *Teddy N. v. Berryhill*, 18-CV-0234, 2019 WL 1429519, at *3 (N.D.N.Y. Mar. 29, 2019) (Sharpe, J.) (citing *Domm v. Colvin*, 579 F. App'x 27, 28-29 (2d Cir. 2014)).

Although Dr. Jenouri examined Plaintiff on June 6, 2017, approximately eighteen months before the date last insured, the ALJ considered evidence from the periods before and after the examination, including through the date last insured, and found that evidence consistent with Dr. Jenouri's opinion.  (Dkt. No. 10, Attach. 2 at 21.)

### 3.    Opinion of Dr. Harding

The ALJ found that Dr. Harding's opinion—that Plaintiff retains the functional capacity to perform the basic mental demands of unskilled work—was consistent with her symptoms of depression and anxiety while still exhibiting a mostly average intellectual function, appropriate general fund of information, and fair insight and judgment.  (Dkt. No. 10, Attach. 2 at 23.)  In addition, the ALJ found that Dr. Harding's opinion was consistent with Plaintiff's conservative and routine treatment history, which involved medication management and psychotherapy.  (*Id*.) Moreover, the ALJ noted Dr. Harding's familiarity with Social Security program knowledge. (*Id*.)

Although Dr. Harding's opinion—dated June 14, 2017—pre-dated (and thus, did not include the review of) some of Dr. Mehrhof's records, Dr. Harding reviewed over one year of medical evidence, including numerous psychiatric treatment visits Plaintiff attended with Dr. Kowalski, which generally showed psychiatric functioning within normal limits.  (Dkt. No. 10, Attach. 3 at 4-9.)  In addition, Dr. Harding reviewed Dr. Mehrhof's opinion dated May 2017.  (*Id*. at 16-17.)  Moreover, in considering the weight to assign Dr. Harding's opinion—and finding that it was consistent with Plaintiff's subsequent treatment history—the ALJ specifically cited Dr. Mehrhof's treatment records.  (Dkt. No. 10, Attach. 2 at 23 [citing Dkt. No. 10, Attach. 8 at 25, 29, 39, 46, 50, 53, 63, 66, 72, 110].)  Further, Plaintiff failed to identify what, in the additional treatment records of Dr. Mehrhof, would undermine or contradict the conclusion that Dr. Harding reached.

As a result, I find that the ALJ properly assigned great weight to the opinion of Dr. Harding.

For each of these reasons, I recommend that the Court deny Plaintiff's motion for judgment on the pleadings asserting that the ALJ's decision was not supported by substantial evidence.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be **<u>DENIED</u>**; and it is further respectfully

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) be **<u>GRANTED</u>**; and it is further respectfully

**RECOMMENDED** that the Commissioner's decision denying Plaintiff disability benefits be **AFFIRMED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED**.

Dated: December 15, 2021
Binghamton, New York

_Miroslav Lovric_

Hon. Miroslav Lovric
United States Magistrate Judge